UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN ELLIOT,
  *individually and on behalf of all others similarly situated,*

    Plaintiffs,

    v.                                                          Case No. 25-CV-421-SCD

STATE OF WISCONSIN,
ADAMS COUNTY, ASHLAND COUNTY, BARRON COUNTY,
BAYFIELD COUNTY, BROWN COUNTY, BUFFALO COUNTY,
BURNETT COUNTY, CALUMET COUNTY, CHIPPEWA COUNTY,
CLARK COUNTY, COLUMBIA COUNTY, CRAWFORD COUNTY,
DANE COUNTY, DODGE COUNTY, DOOR COUNTY,
DOUGLAS COUNTY, DUNN COUNTY, EAU CLAIRE COUNTY,
FLORENCE COUNTY, FOND DU LAC COUNTY,
FOREST COUNTY, GRANT COUNTY, GREEN COUNTY,
GREEN LAKE COUNTY, IOWA COUNTY, IRON COUNTY,
JACKSON COUNTY, JEFFERSON COUNTY, JUNEAU COUNTY,
KENOSHA COUNTY, KEWAUNEE COUNTY, LA CROSSE COUNTY,
LAFAYETTE COUNTY, LANGLADE COUNTY, LINCOLN COUNTY,
MANITOWOC COUNTY, MARATHON COUNTY,
MARINETTE COUNTY, MARQUETTE COUNTY, MENOMINEE COUNTY,
MILWAUKEE COUNTY, MONROE COUNTY, OCONTO COUNTY,
ONEIDA COUNTY, OUTAGAMIE COUNTY, OZAUKEE COUNTY,
PEPIN COUNTY, PIERCE COUNTY, POLK COUNTY,
PORTAGE COUNTY, PRICE COUNTY, RACINE COUNTY,
RICHLAND COUNTY, ROCK COUNTY, RUSK COUNTY,
SAUK COUNTY, SAWYER COUNTY, SHAWANO COUNTY,
SHEBOYGAN COUNTY, ST. CROIX COUNTY, TAYLOR COUNTY,
TREMPEALEAU COUNTY, VERNON COUNTY, VILAS COUNTY,
WALWORTH COUNTY, WASHBURN COUNTY, WASHINGTON COUNTY,
WAUKESHA COUNTY, WAUPACA COUNTY, WAUSHARA COUNTY,
WINNEBAGO COUNTY, WOOD COUNTY, and
CITY OF MILWAUKEE,
    Defendants.

## DECISION AND ORDER

John and Darlene Elliot, on behalf of themselves and all others similarly situated, challenge the practice whereby local or county governments retain surplus proceeds from property tax foreclosures. Under Wisconsin's previous statute, when a government foreclosed on a property for delinquent taxes, it retained any surplus after the property tax debt had been paid. Wisconsin amended this statute in April 2022 to require that any surplus be returned to the prior property owner. Then, the Supreme Court held in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), that when a government entity keeps surplus proceeds from property tax foreclosures, that constitutes a taking of private property requiring just compensation under the Fifth Amendment.

In February 2025, the plaintiffs filed a class action complaint in state court alleging that the State of Wisconsin, all Wisconsin counties, and the city of Milwaukee violated the takings clauses of the Wisconsin and U.S. constitutions, and the excessive fines clause of the Wisconsin Constitution. The defendants removed the case to federal court, and the plaintiffs moved to remand to state court and filed an amended complaint. The defendants moved to dismiss the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the foregoing reasons, I will grant the plaintiffs' motion to remand, and grant in part and deny in part the defendants' motion to dismiss.

## BACKGROUND

This case implicates the proper procedure for litigating a taking. The Fifth Amendment, applicable to states through the Fourteenth Amendment, says that private property shall not "be taken for public use, without just compensation." U.S. Const. amends. V, XIV. If the government takes private property without paying just compensation, then the former property owner can sue the taker to recover. The exact boundaries of what's "private

property," what's "taking," and what's "just" compensation have gained recognition and definition, as informed by history and tradition. *See, e.g.*, *Horne v. Dep't of Agric.*, 576 U.S. 351, 358 (2015) (government physical appropriation of personal property is a per se taking, akin to real property); *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002) ("Our jurisprudence involving condemnations and physical takings is as old as the Republic and, for the most part, involves the straightforward application of per se rules. Our regulatory takings jurisprudence, in contrast, is of more recent vintage.").

"States have long imposed taxes on property. Such taxes are not themselves a taking." *Tyler*, 598 U.S. at 637. If the property owner doesn't pay the taxes, then a government entity can foreclose on the property and sell it or put it to public use. *Id.* at 637–38. For a long time, like a sizeable minority of other states, Wisconsin counties retained surplus proceeds after a tax foreclosure sale. Am. Compl., ECF No. 15 ¶¶ 137, 139; *Tyler*, 598 U.S. at 642 ("Thirty-six States and the Federal Government require that the excess value be returned to the taxpayer."). In Wisconsin, the counties didn't give surplus proceeds back to former property owners (with an exception for homestead properties). Am. Compl., ECF No. 15 ¶ 137 (citing Wis. Stat. § 75.36). On April 2, 2022, that law changed. *Id.* ¶ 139 (citing 2021 Wis. Act 216). This change required counties to give surplus proceeds back to the former owner after a tax foreclosure sale. *Id.* But this law did not apply retroactively. *See* Cnty. Defs.' Br. Supp. Mot. Dismiss, ECF No. 21 at 2–3.

Soon after this amendment went into effect, the U.S. Supreme Court held in *Tyler v. Hennepin* that statutory schemes that allowed counties to keep surplus proceeds after a tax foreclosure sale violated the takings clause. *See Tyler*, 598 U.S. at 644–45. Any states and counties that still engaged in this practice needed to change their laws. *See id.*; Cnty. Defs.'

3

Opp'n to Mot. to Remand, ECF No. 22 at 3. The question remained, however—what about pre-*Tyler* foreclosures?

Plaintiffs fall into this category. Am. Compl., ECF No. 15 ¶ 140. They seek relief on behalf of owners who: (1) had their properties foreclosed on to satisfy a tax debt; (2) where the property was sold for more than the debt; (3) and one of the defendants retained the surplus; (4) between January 1,1989 and April 2, 2022. *Id.* The defendants are Wisconsin counties, the city of Milwaukee (classified as a county under Wis. Stat. § 75.06), and the State of Wisconsin. *Id.* ¶ 138.

In February 2025, the plaintiffs filed a putative class action against the defendants in Wisconsin state court. *See* Ex. B to Joint Notice of Removal, ECF No. 1-2 at 12. The defendants removed the matter to federal court, *see* Joint Notice of Removal, ECF No. 1, where it was randomly assigned to me, and the parties subsequently consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 7, 9, 11, 12. On May 9, 2025, plaintiffs filed an amended class-action complaint. *See* Am. Compl., ECF No. 15 ¶ 188–91. Count 1 alleges that defendants violated Wisconsin's takings clause, article 1 section 13. *Id.* ¶ 197. Count 2 alleges that defendants violated Wisconsin's excessive fines clause, article 1 section 6. *Id.* ¶ 228. And count 3 alleges that defendants violated the U.S. Constitution's takings clause in the Fifth Amendment, applicable to the states by the Fourteenth Amendment. *Id.* ¶¶ 237–38.

On May 9, 2025, plaintiffs filed a motion to remand the case to state court. Pls.' Mot. Remand State Ct., ECF No. 16. The same day, defendants filed motions to dismiss the plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(6). ECF Nos. 18, 20, 23. These motions are now fully briefed and ready for resolution. *See* ECF Nos. 22, 25, 27–28, 31–33.

# LEGAL STANDARDS

## I. Remand

"A defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Glob. Mkts., Inc.*, 419 F.3d 649, 653–54 (7th Cir. 2005) (citing 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)), *vacated on other grounds*, No. 05-776, 2006 U.S. LEXIS 4898 (June 26, 2006). Under § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. "Removal is proper if it is based on statutorily permissible grounds, 28 U.S.C. § 1441, and if it is timely, 28 U.S.C. § 1446." *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004) (citation modified). The party seeking to invoke federal jurisdiction bears the burden of demonstrating that removal is proper. *Id.*

## II. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Glob. Credit & Collect. Corp.*, 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Zemeckis*, 679 F.3d at 635 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all

5

reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Cap. Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)). Complaints need not plead around affirmative defenses, unless "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999)).

## DISCUSSION

Plaintiffs first ask to remand the case to state court because the state claims depend on novel issues of state law and may moot the federal claim. Pls.' Mot. Remand, ECF No. 16 at 9. By staying the federal claim and declining to exercise supplemental jurisdiction over the state claims, this court can dodge complicated questions of whether there's a direct cause of action under the Takings Clause, and an *Erie* analysis of how the Supreme Court of Wisconsin would apply *Tyler v. Hennepin* to the state constitution. *Id.* at 6. Defendants respond that the federal and state claims should all be resolved together; plaintiffs' preferred sequencing doesn't dictate jurisdiction; a party can't invoke abstention whenever state and federal constitutional provisions overlap; and Wisconsin's takings clause has always been interpreted in lockstep with its federal equivalent. *See* Def. Milwaukee's Br. Opp'n Mot. Remand, ECF No. 18-1 at 4–6; Cnty. Defs.' Opp'n Mot. Remand, ECF No. 22 at 4–6; Br. Opp'n Pl.'s Mot. Remand State Ct., ECF No. 25 at 6, 8–10, 15. In the motions to dismiss, the defendants argue that there is no direct cause of action under the takings clause, therefore plaintiffs alleged a § 1983 claim even if they didn't label it as such. *See* Def. Milwaukee's Br. Supp. Mot. Dismiss, ECF No. 18-1 at 5; Cnty. Defs.' Br. Supp. Mot. Dismiss, ECF No. 21 at 4–5; Cnty. Defs.' Reply Br.

6

Supp. Mot. Dismiss, ECF No. 33 at 2–3. And because section 1983 claims carry a three-year statute of limitations, the plaintiffs' claims are barred. *See* Cnty. Defs.' Br. Supp. Mot. Dismiss, ECF No. 21 at 4–5; Br. Supp. State of Wis.'s Mot. Dismiss, ECF No. 24 at 21–23. I conclude that the plaintiffs' federal claim is really a § 1983 claim, and that claim is time-barred. And because the federal claim will be dismissed, I will remand the state claims to state court.

**I.     There is not a direct cause of action under the Takings Clause here.**

Although the law has been unsettled, current guidance suggests that there is not a direct cause of action under the Takings Clause—at least, not here. Section 1983 provides a procedural vehicle to challenge alleged takings. *See Devillier v. Texas*, 601 U.S. 285, 286 (2024); *Knick v. Twp. of Scott*, 588 U.S. 180, 184 (2019). "[T]he Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy." *Smith v. Kentucky*, 36 F.4th 671, 674 (6th Cir. 2022) (internal quotations omitted); *see also Bieneman v. City of Chicago*, 864 F.2d 463, 469–70 (7th Cir. 1988). When the legislature provided a cause of action to remedy a constitutional violation, that cause of action should be pursued in lieu of resolving whether a direct cause of action exists. *See Devillier v. Texas*, 601 U.S. at 292.

In *Devillier v. Texas*, the Court didn't answer whether there is a direct cause of action under the Takings Clause, since Texas's inverse condemnation procedure provided an adequate vehicle to raise federal and state constitutional issues. *Id.* "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *Id.* at 291. But "the absence of a case relying on the Takings Clause for a cause of action does not by itself prove there is no cause of action." *Id.* at 292. "Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings

7

Clause." *Id.* At the very least, when a procedural vehicle is available to bring a constitutional claim, then the direct cause of action question need not be addressed. *See id.* The Seventh Circuit has agreed: "Neither we nor the Supreme Court have ever recognized a direct cause of action for compensation under the Takings Clause." *Gerlach v. Rokita*, 95 F.4th 493, 498 (7th Cir. 2024).

    *Devillier* does not directly support the plaintiffs' proposed abstention doctrine. Plaintiffs argue *Devillier*'s "logic . . . shows that the state law claim predominates over the federal claims." Pls.' Mot. Remand State Ct., ECF No. 16 at 6. *Devillier* didn't imply that state law "predominates" over federal law in this arena; rather, "the mere fact that the Takings Clause provided the substantive rule of decision for the equitable claims . . . does not establish that it creates a cause of action for damages." *Devillier*, 601 U.S. at 291. *Devillier* addressed causes of action, not sequencing or supplemental jurisdiction. *See id.* In *Knick v. Township of Scott*, the Court spoke to sequencing and jurisdiction, finding that a plaintiff does *not* need to exhaust state remedies before suing in federal court under § 1983. 588 U.S. at 184. "The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim . . . And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983." *Id.* at 191. *Devillier* and *Knick* don't counsel for or against plaintiffs' proposed abstention rule.

    In pleadings, substance is more important than form. "[W]hat matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *C.f. SEC v. Jarkesy*, 603 U.S. 109, 135 (2024) (finding that the nature, not the label, of a suit determined the accused's rights). "[I]t is unnecessary and needlessly redundant to imply a cause of action arising

8

Case 2:25-cv-00421-SCD   Filed 09/24/25   Page 8 of 17   Document 35

directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights." *Smith v. Kentucky*, 36 F.4th at 674. A party can't "in effect, 'plead around' absolute barriers to relief by relabeling the nature of the action." *Rubin v. Green*, 847 P.2d 1044, 1053 (Cal. 1993) (unfair competition context). "The nature or substance of the cause of action, rather than the form of the action, determines the applicable statute of limitations." *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004). Complaints plead facts, not labelled causes of action: "A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Ultimately, the allegations' substance—not its proposed label—controls the applicable law and procedure. *See id.*

This is consistent with a recently-decided Eleventh Circuit case. In that case, the county took Brandon Fulton's horses without paying just compensation. *Fulton v. Fulton Cnty. Bd. of Comm'rs*, 148 F.4th 1224, ___, 2025 U.S. App. LEXIS 19233, 2025 WL 2166416, at *3–4 (11th Cir. 2025). A § 1983 takings claim requires that an official policy or custom stripped the person of their property. *Id.* at *53–54 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). But the Takings Clause does not include this requirement. *Id.* Fulton couldn't point to a policy or custom under which the county took his horses, so § 1983 was "categorically bar[red]" for him. *Id.* at 62. But the court held that he still had a direct cause of action under the Fifth Amendment: "if a legislative substitute for 'just compensation' is not coextensive with the constitutionally prescribed remedy of 'just compensation,' then the constitutionally prescribed remedy remains directly available." *Id.* at 26. Here, unlike Fulton,

these plaintiffs pled a policy or practice that deprived them of property, so § 1983 was available to them.

In *Devillier*, state law provided the vehicle. Here, federal "law provides a cause of action that allows property owners to vindicate their rights under the Takings Clause." *Devillier*, 601 U.S. at 293. "This case therefore does not present the circumstance in which a property owner has no cause of action to seek just compensation." *Id.* Even though plaintiffs label their claim as a direct cause of action under the Fifth Amendment, Congress provided plaintiffs with a remedy in § 1983 to pursue their claims. *See Knick*, 588 U.S. at 190–91. So that statute and its attendant limitations control here. *See id.*

## II. The statute of limitations bars plaintiffs' federal claim.

A three-year statute of limitations bars plaintiffs' federal claim. First, Wisconsin's three-year statute of limitations for personal injury cases applies to § 1983 claims. Second, these plaintiffs' claims are plainly barred by the statute of limitations. Third, equitable principles do not render the statute of limitations inapplicable.

### A. The statute of limitations is three years.

First, § 1983 borrows a statute of limitations from the forum state's personal injury law. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). In Wisconsin, "[a]n action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 3 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred." Wis. Stat. § 893.53. "The residual or general personal injury statute of limitations applies to 42 USC 1983 actions." Wis. Stat. Ann. § 893.53 (citing *Owens v. Okure*, 488 U.S. 235 (1989)).

The plaintiffs argue that regulatory takings case law doesn't translate onto per se takings. *See* Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 12–14. This distinction is irrelevant to what statute of limitations applies. *See Bieneman*, 864 F.2d 463 at 467–68 (airport noise context). The plaintiffs argue that, if a statute of limitation needs to apply, then more appropriate statutes are adverse possession of abandoned personal property under Wis. Stat. § 177.0201(10), or wrongful taking of personal property under Wis. Stat. § 893.51(1). Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 25, 37. The Seventh Circuit rejected adverse possession as an analogy for takings, specifically when determining the limitations period. *See Bieneman*, 864 F.2d at 468. And the Supreme Court rejected abandoned property as an analogy for takings generally in *Tyler*. *See* 598 U.S. at 646–47. And plaintiffs don't point to any recent case in federal court that has applied a different limitations period than that supplied for § 1983. *See* Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 20–24. *See, e.g.*, *Cavaluzzi v. Cnty. of Sullivan*, No. 23 CIV. 11067 (PAE), 2024 WL 5238644, at *6 (S.D.N.Y. Dec. 27, 2024); *Lynch v. Multnomah Cnty.*, No. 1:23-CV-01434-IM, 2024 WL 5238284, at *14–16 (D. Or. Dec. 27, 2024). The statute of limitations is three years.

**B. All of plaintiffs' claims accrued more than three years before filing.**

Second, even under the latest possible accrual date, these plaintiffs' claims are time-barred. It is unsettled exactly when a takings claim "accrues" in the tax-foreclosure surplus context. "Some cases have treated the accrual date as the date of the property's sale, . . . while others have treated the accrual date as the date the defendant took ownership of the property, . . . the date a new deed was executed in connection with the property sale, . . . or the date the title to the property was formally transferred." *Cavaluzzi v. Cnty. of Sullivan*, No. 23 CIV. 11067 (PAE), 2024 WL 5238644, at *6 (S.D.N.Y. Dec. 27, 2024) (citation modified).

11

The named plaintiff whose property sold most recently is Carl Geib. *See* Am. Compl., ECF No. 15 at 16; Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 10. Walworth County acquired Mr. Geib's property on June 10, 2021, and sold it on October 25, 2021. *Id.* If the accrual date is the date of the property's sale, then the limitations period would end on October 25, 2024—four months before the plaintiffs' complaint was filed in state court. Plaintiffs need not anticipate or plead around statutes of limitations, but here the information is provided on the face of the complaint. *See Lewis*, 411 F.3d at 842. Even under the latest accrual date, the statute of limitations categorically bars these plaintiffs' claims.

### C. Equitable relief is not available.

Third, equitable lanes around the statute of limitations are closed. Plaintiffs claim that constitutional remedies can't be limited; the statute of limitations should equitably toll; and the defendants should be equitably estopped from raising the statute of limitations. *See* Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 35–46. None of these arguments are convincing.

Constitutional claims can be limited by statutes of limitation. "A constitutional claim can become time-barred just as any other claim can." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) (internal quotation omitted). Plaintiffs rely on *Wisconsin Retired Teachers Association v. Wisconsin Education Association Council* for the proposition that a statute can't limit a constitutional right. *See* Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 31–32. However, that case specifies that "the constitutional mandate of just compensation cannot be limited *in amount* by statute." *Wis. Retired Tchrs. Ass'n v. Wis. Educ. Ass'n Council*, 207 Wis. 2d 1, 29 (1997) (citing *Zinn v. State*, 112 Wis. 2d 417, 437–38 (1983)). "'[T]he legislature can provide specific procedures governing the recovery of such

compensation as long as the procedure provides 'just compensation.' If such legislation is enacted, the property owner must follow those procedures in order to receive the compensation." *Zinn*, 112 Wis. 2d at 437–38. "The Takings Clause permits each State to 'define the process through which an owner can claim the surplus' and to keep the surplus if the owners do not comply." *Howard v. Macomb Cnty.*, 133 F.4th 566, 570 (6th Cir. 2025) (citation modified) (quoting *Tyler*, 598 U.S. at 644). Constitutional claims generally, and takings claims specifically, are not immune from procedure—so long as the procedure provides just compensation.

New case law does not toll claims. *See Fayoade v. Spratte*, 284 Fed. Appx. 345, 347–48 (7th Cir. 2008) (unpublished); *Appel v. LaSalle Cnty. State's Atty. Felony Enf't Unit*, No. 18-cv-2439, 2019 U.S. Dist. LEXIS 150277, at *18 (N.D. Ill. Sept. 4, 2019). "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if, despite the exercise of all due diligence, he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Couns. of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001). "[T]he state, rather than the federal, doctrine of equitable tolling governs cases of borrowing. The reason is the reciprocal relation between the length of the limitations period and the grounds for tolling (extending) it." *Id.* at 596 (internal citations omitted). "Equitable tolling is a remedy that courts use to toll statutory deadlines when justice requires. Courts may invoke equitable tolling when a party misses a deadline due to factors outside the party's control." *State ex rel. Davis v. Cir. Ct. for Dane Cnty.*, 2024 WI 14, ¶ 39. "Although Wisconsin case law on equitable tolling is sparse, it is clear that, as in *Shropshear*, tolling is available only when the plaintiff's failure to meet a filing deadline is out of the plaintiff's control or occurred despite the plaintiff's

13

due diligence." *Henderson v. Jess*, No. 18-CV-680-JDP, 2021 WL 1080269, at *28 (W.D. Wis. Mar. 19, 2021).

Here, the failure to file a timely complaint wasn't due to circumstances outside plaintiffs' control, nor despite due diligence. "[A] § 1983 takings claim based on the retention of a taxpayer's surplus equity was already viable before the Supreme Court decided *Tyler*. . . . To be sure, the Supreme Court's decision in *Tyler* appears to have strengthened the force of plaintiffs' § 1983 claims. But it did not create them out of whole cloth." *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141, 149–50 (N.D.N.Y. 2024). So too here—*Tyler* articulated a principle that Wisconsin had already embraced by statutory amendment. Just the same, neither *Tyler* nor the statutory amendment actively prevented plaintiffs from filing earlier.

When the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993). In *Polizzi v. County of Schoharie*, relying on this rule, the court applied *Tyler* retroactively to two plaintiffs who had timely filed a § 1983 claim to challenge a tax-foreclosure surplus taking, even though their individual foreclosures pre-dated *Tyler*. 720 F. Supp. 3d at 149. However, *Tyler* did not apply retroactively to a third plaintiff whose claim was already barred by the statute of limitations. *Id.* at 147. Principles articulated by new case law apply retroactively to pending cases, but do not revive already expired claims. *See id.*

Lastly, equitable estoppel does not apply here. Plaintiffs argue that the Wisconsin court of appeals rendered unconstitutional decisions that the defendants then enforced. *See* Pls.' Omnibus Br. Opp. Defs.' Mot. Dismiss, ECF No. 28 at 38–45. In contrast to equitable

14

tolling, "the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time[.] . . . It denotes efforts *by the defendant*, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Shropshear*, 275 F.3d at 595 (emphasis added). "Our court has held that in a case such as this, where the federal court is applying a (borrowed) state statute of limitations, the federal doctrine of equitable estoppel, not the state doctrine, controls." *Id.* at 598. "Any deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel in federal limitations law." *Id.* at 597.

In *Shropshear*, a plaintiff filed an untimely § 1983 action to challenge the city's demolition of his home. *Id.* at 594. The plaintiff alleged that his own lawyer and another individual "in effect concealed his claim from him by misrepresenting that they would file a timely suit on his behalf." *Id.* at 597. These allegations did not compel equitable estoppel of the statute of limitations because "the alleged misconduct that caused his delay in suing was not committed by the public officials whose alleged violation of the Constitution gave rise to his suit. Shropshear did name his lawyer and the other private entity that delayed his suit as additional defendants. But it would be bootstrapping to allow the limitations on the defense of equitable estoppel to be circumvented in such a way." *Id.* at 598. So too here, the alleged misconduct by Wisconsin courts in deciding *Ritter* and *Jensen* were not committed by the entities "whose alleged violation of the constitution gave rise to [this] suit." *See id.* The defendants reasonably relied on Wisconsin courts' understanding of takings law, and the statute at that time, alongside the plaintiffs. Equitable estoppel does not apply here.

15

In sum, the three-year statute of limitations for § 1983 actions bars count 3. Equitable principles do not justify tolling or nullifying the statute of limitations. Accordingly, that claim will be dismissed.

### III. The state claims should be litigated in state court.

With count 3 dismissed, counts 1 and 2 should be remanded to state court. Under 28 U.S.C. § 1367, "as under *Gibbs*, jurisdiction over a federal-law claim brings with it supplemental jurisdiction over a state-law claim arising from the same facts. That derivative jurisdiction, though, is to some extent discretionary; § 1367 spells out circumstances, again derived from *Gibbs*, in which a federal court may decline to hear a state claim falling within the statute's bounds." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, (1966)). A district court may decline supplemental jurisdiction if (1) it "raises a novel or complex issue of State law"; (2) the supplemental claim "substantially predominates" over the claims within the court's original jurisdiction; or (3) "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §§ 1367(c)(1)–(3). "[A]lthough supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin*, 604 U.S. at 32.

First, declining supplemental jurisdiction is appropriate because only state claims remain after dismissing count 3. *See* 28 U.S.C. § 1367(c)(3). Second, counts 1 and 2 raise novel issues of state law best addressed in state court. The Supreme Court of Wisconsin hasn't yet considered *Tyler* and retroactivity under article 1, section 13 of the Wisconsin Constitution. *Contra Schafer v. Kent Cnty.*, Nos. 164975, 165219, 2024 Mich. LEXIS 1438 (Mich. 2024) (holding that the Michigan legislature could not limit a newly-articulated takings principle to

16

apply only prospectively) ("While respecting established procedural principles including forfeiture and finality, *Rafaeli* must be applied retroactively to timely filed [tax-foreclosure surplus] cases not yet final at the time of the decision."). Further, *Tyler*'s concurrence offers guidance, but no binding rationale, for how the federal excessive fines clause applies to these kinds of takings. *See Tyler*, 598 U.S. at 648 (Gorsuch, J., concurring). So even if article 1 section 6 has been interpreted in lockstep with the federal excessive fines clause, count 2 still poses novel issues of law without clear Supreme Court precedent. For these reasons, counts 1 and 2 should be remanded to state court.

## CONCLUSION

For all the foregoing reasons, defendants' motions to dismiss, ECF Nos. 18, 20, 23, are **GRANTED** in part: count three is dismissed as barred by the statute of limitations. Plaintiffs' motion to remand, ECF No. 16, is **GRANTED**.

**SO ORDERED** this 24th day of September, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge